UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FLORENTINO NOEL SANTOS, | ) | 3:22cv704 (SVN) |
|     *Petitioner*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WARDEN TIMETHEA PULLEN, | ) | |
|     *Respondent*. | ) | August 22, 2023 |

## RULING ON MOTION TO DISMISS
## PETITION FOR HABEAS CORPUS UNDER 28 U.S.C. § 2241

Petitioner Florentino Noel Santos is a sentenced federal inmate in custody of the Bureau of Prisons ("BOP") at the Federal Correctional Institution ("FCI") in Danbury, Connecticut. Pet., ECF No. 1. Petitioner has filed for a writ of habeas corpus under 28 U.S.C. § 2241 challenging an adverse disciplinary decision on the grounds that it violated the Fifth Amendment's procedural due process guarantee and the Eighth Amendment.[1] Pet. at 1–3, 6–7. Specifically, Petitioner was charged with possession of narcotics and giving or accepting money without authorization; after a hearing, he was sanctioned with forty-one days' loss of good conduct time, sixty days' disciplinary segregation, and six months' loss of commissary for the narcotics charge and six months' loss of phone privileges for the financial charge. He requests an order expunging his incident report, reinstating all privileges, and reinstating his good conduct credit. *Id.* at 8.

Respondent, the warden of FCI Danbury, has filed a motion to dismiss the petition for failure to state a claim. Respondent's arguments pertain only to Petitioner's Fifth Amendment

---

[1] Petitioner characterizes his petition as a Fourth and Eighth Amendment claim, but it is more properly asserted under the Fifth and Eighth Amendments because Petitioner asserts that the Disciplinary Hearing Officer ("DHO") sanctioned him without sufficient evidence.

1

claim, and do not address Petitioner's Eighth Amendment claim. Thus, the court characterizes Respondent's motion as a partial motion to dismiss, and the Eighth Amendment claim for habeas relief remains pending.

For the following reasons, Respondent's motion to dismiss is granted in part.

## I.     FACTUAL BACKGROUND

The court recounts the following factual background as reflected in the petition, materials attached to the petition, and the disciplinary record, which is incorporated by reference in the petition.

While incarcerated at the Metropolitan Detention Center in Brooklyn, New York, at some point between July and September of 2019,[2] correctional staff investigated Petitioner on suspicion of "running a store." ECF No. 12-4 at 2. Staff believed that Petitioner "received money from numerous inmates" and "gave money to numerous inmates" in violation of BOP Code 328. *Id.* During the investigation, Petitioner admitted to running a store. *Id.* As part of the investigation, staff then discovered "half of a white envelope with an unknown liquid substance." *Id.* Staff tested the substance with a narcotics identification kit ("NIK"), which resulted in a positive reading for amphetamines. *Id.* A second test confirmed the same result. *Id.*

On September 6, 2019, staff delivered to Petitioner a copy the Incident Report alleging violations of BOP Codes 113 (possession of narcotics) and 328 (giving or accepting money

---

[2] Petitioner has highlighted a discrepancy in the dates that appear various documents, and claims that the discrepancy undermines the DHO's findings. For instance, in the header of the Incident Report, the date of incident is identified as "7-29-2019," whereas later in the same document, the date is listed as "9/6/2019," with the parenthetical "Staff became aware of incident." ECF No. 12-4 at 2. As explained below, any dispute about when the incident took place is not material to resolution of this motion. Nonetheless, the Court notes that, according to the Incident Report, the first-mentioned alleged illicit monetary transaction appears to have taken place on July 29, 2019, *id.*, and, according to the DHO's Report, advanced written notice of the charge was provided to Petitioner on September 6, 2019. ECF No. 12-3 at 2.

without authorization).  *Id.*  On September 10, 2019, Petitioner was advised of his rights in connection with the disciplinary charge.  ECF No. 12-3 at 2.

The DHO conducted a hearing on September 26, 2019.  *Id.* at 2, 5.  Petitioner waived his right to a staff representative.  *Id.* at 2.  The DHO report states that Petitioner made no defense and called no witnesses.  *Id.*  After the DHO read aloud the relevant section of the Incident Report, Petitioner stated:  "This ain't mine, I had a celly, aren't we both supposed to go to [segregated housing] if you guys find drugs?".  *Id.*

Ultimately, the DHO found the charges under both codes to be supported by the evidence.  *Id.* at 4.  For the financial infraction, the DHO relied on the money transfers and Petitioner's own admission to running a store.  *Id.*  For the narcotics charge, the DHO relied on the NIK tests, the incident report, photographs of the physical evidence, and the fact that Petitioner did not refute that drugs were found among his possessions.  *Id.*  For the narcotics charge, DHO sanctioned Petitioner to forty-one days' loss of good time credits, sixty days of disciplinary segregation, and six months' loss of commissary.  *Id.*  For the financial infraction, DHO sanctioned Petitioner to six months' loss of phone privileges.  *Id.*

In his petition, Petitioner claims that his Fifth Amendment and Eighth Amendment rights were violated because:  (1) the evidence was insufficient to support the narcotics charge; and (2) the loss of good time credits constitutes cruel and unusual punishment.  Pet. at 6.

Both parties agree Petitioner exhausted his claims.

## II. LEGAL STANDARD

### A. Section 2241

Section 2241 grants federal courts jurisdiction to issue writs of habeas corpus to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A writ of habeas corpus under § 2241 "is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). An inmate may challenge under § 2241, for example, "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001).

### B. Rule 12(b)(6)

A motion to dismiss a habeas petition, like any other motion to dismiss a civil complaint, is governed by Federal Rule of Civil Procedure 12(b)(6). *Spiegelmann v. Erfe*, No. 3:17-CV-2069 (VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018). To survive dismissal, the petition must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557.

Because Petitioner filed the present petition *pro se*, the Court must construe his filings

4

"liberally" and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).  "Although courts still have an obligation to liberally construe a *pro se* complaint, the complaint must include sufficient factual allegations to meet the standard of facial plausibility" under Rule 12(b)(6).  *Sentementes v. Gen. Elec. Co.*, No. 3:14-CV-00131-VLB, 2014 WL 2881441, at *2 (D. Conn. June 25, 2014) (cleaned up).

In considering a motion to dismiss, the court typically may consider only the complaint, or, here, the petition.  However, the petition "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," as well as any documents deemed "integral" to the petition.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations and internal quotation marks omitted); *see also Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (explaining that, in considering a motion to dismiss, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint").  To that end, because the petition relies on records relating to Petitioner's disciplinary record, the Court will consider these documents, and related records submitted by Respondent, in assessing Respondent's motion.

**III.    DISCUSSION**

A.  <u>Fifth Amendment Claim</u>

The Due Process Clause of the Fifth Amendment provides that "no person shall be . . . deprived of life, liberty, or property, without due process of law[.]"  U.S. CONST. amend. V. "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they

5

are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). To state a claim for relief for denial of procedural due process, Petitioner must show that he: (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

While due process protections afforded a prison inmate do not equate to "the full panoply of rights due a defendant in such [criminal] proceedings," *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974), an inmate is entitled "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken," *Sira*, 380 F.3d at 69 (2d Cir. 2004). The Second Circuit has emphasized that, in the context of disciplinary proceedings, "the *only* process due an inmate is that minimal process guaranteed by the Constitution, as outlined in *Wolff*." *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004) (emphasis in original).

Judicial review of the written findings required by due process is limited to determining whether the disposition is supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). This standard is satisfied if there is "reliable evidence" in the record that supports the disciplinary ruling. *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004) (construing "some evidence" as "reliable evidence" of inmate's guilt). The "some evidence" standard is "extremely tolerant

and is satisfied if there is *any* evidence in the record that supports the disciplinary ruling." *Sira*, 380 F.3d at 69; *see also Leyva v. Warden*, 699 F. App'x. 4, 5 (2d Cir. 2017) (upholding disciplinary ruling in case involving possession of contraband cell phones where "some evidence" standard was satisfied); *Hill,* 472 U.S. at 455 ("We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.").

Respondent does not challenge Petitioner's due process claim on grounds that Petitioner lacks a cognizable liberty interest. Instead, Respondent argues that the disciplinary record demonstrates that Petitioner was afforded constitutionally sufficient procedural safeguards and that the DHO's decision was supported by at least some reliable evidence.[3] Petitioner, for his part, contests that the DHO's decision on the narcotics charge was supported by some reliable evidence. Specifically, Petitioner claims that: (1) no addition lab testing was performed on the envelope Pet. At 6; (2) staff did not take a photograph of the envelope, *id.* at 8; (3) the SIS technician who performed the NIK tests did not provide his qualifications, Pet.'s Br. In Opp., ECF No. 16 at 1; (4) the incident report lists different dates for the underlying incidents, *id.* at 1–2; and (5) the DHO failed to establish a chain of custody, *id.* at 2. The Court holds that, under the "extremely tolerant" standard, which is satisfied "if there is *any* evidence in the record that supports the disciplinary ruling," *Sira*, 380 F.3d at 69, there was no due process violation because the DHO's finding was supported by some reliable evidence.

---

[3] The Court interprets the petition as contesting only whether "some reliable evidence" supports the DHO's written findings. Respondent's briefing includes a section contending that Petitioner received all the process he was due, such as advance notice of the charges and a hearing in front of an impartial officer at which documentary evidence could be presented and witnesses called. ECF No. 12-1 at 8. To the extent the petition can be construed as making any argument that Petitioner was deprived of these aspects of due process, the Court agrees with Respondent's contention that he was not.

First, to the extent Petitioner argues that a NIK test cannot constitute some evidence to support his sanction, his argument is unavailing. While it is true that a court in this Circuit has recognized that "the NIK test may have flaws and give false positive results," *Smart v. Annucci*, No. 19-CV-7908, 2021 WL 260105, at *9 (S.D.N.Y Jan. 26, 2021), the same court—and several others—have determined that NIK test results nonetheless satisfy the some reliable evidence standard. *Nichols v. Von Blanckensee*, 18-CV-754, 2018 WL 4387558, at *2–3 (S.D.N.Y. Sept. 14, 2018) (finding NIK result indicating positive reading for amphetamines supported DHO's decision); *Bolanos v. Coughlin*, No. 91-CV-5330, 1993 WL 762112, at *9–10 (S.D.N.Y. Oct. 15, 1993) (finding the NIK results "well-regarded"). Petitioner also argues that staff should have sent the envelope for further testing. Pet. at 6. Given that NIK tests are in fact reliable evidence, however, no further investigation was necessary. Moreover, Petitioner has no right to compel an investigation to generate *new* evidence, through further testing. *Chavis v. Hazlewood*, No. 19-CV-488 (LM), 2020 WL 1290355, at *5 (D.N.H. Mar. 18, 2020) (holding that an inmate had no right to further examination of a cellular phone in connection with disciplinary proceedings); *Ned v. Tatum*, No. 15-CV-178 (LM), 2017 WL 3822736, at *5 (D.N.H. May 16, 2017) (holding that inmate had no right to fingerprint analysis of weapon found under his locker).

Second, Petitioner's argument that staff should have photographed the envelope is contradicted by the record and his own admission, as photographs were taken and presented as evidence before the DHO. Pet. at 6. The DHO report indicates that documentary evidence included "evidence/photos" of the envelope and NIK test. ECF No. 12-3 at 3. In his opposition to the motion to dismiss, Petitioner admits that the DHO relied on photographs of the envelope and positive test. ECF No. 16 at 2. In light of this new position, Petitioner argues that the

photographs of the envelope and tests strips demonstrate only that the envelope was stained, not that the stain was in fact contraband. *Id.* As discussed above, however, two NIK tests performed on the sample confirmed that the stain on the envelope was amphetamines.

Third, the argument that the sanction cannot stand because the incident report contains conflicting dates for when the alleged infractions took place fails. ECF No. 16 at 1–2. While the incident report contains multiple dates, the dates reflect the multiple money transactions underlying Petitioner's financial infraction and the date of the investigation. ECF No. 12-4 at 2. For example, the July 29, 2019, is the date of the first alleged money exchange money, *id.*, while September 6, 2019, is the date of investigation, *id.*

Fourth, Petitioner argues that the SIS technician who performed the NIK test did not provide his qualifications. ECF No. 16 at 1. Petitioner cites *Smart*, 2021 WL 260105, at *2 n.2, for the proposition that NIK tests are only reliable to the extent the test are performed by a certified technician. Even if *Smart* were binding authority, however, *Smart* does not go as far as Petitioner contends. In *Smart*, the sergeant who conducted the NIK test *was* certified, but the petitioner alleged the sergeant did not follow proper NIK testing protocol. *Id.* at *2. *Smart* does not require, however, that the corrections officer *must* be certified to conduct NIK testing in order to deem such testing reliable. Rather, it holds that even if NIK tests "may have flaws and give false positives," and even when a petitioner "allege[s] errors in the testing procedure," NIK tests are reliable enough to support sanctions. *Id.* at *9. Moreover, Petitioner presented no argument about any alleged lack of certification of the person who conducted the test or the reliability of the NIK tests at his hearing. ECF No. 12-3 at 4.

Finally, Petitioner argues that the DHO could not establish a chain of custody between the envelope, the NIK tests, and Petitioner's possession. Even drawing all inferences in Petitioner's favor, Petitioner alleges no facts in support of this position. The DHO report indicates that SIS photographed the envelope and NIK test results. ECF No. 12-3 at 3. Nothing in the incident report or DHO suggests any chain of custody issue.

Ultimately, there is some reliable evidence in the record—the investigation results, Petitioner's lack of a straightforward denial of possession of the narcotics, and the NIK testing results—supporting the DHO's decision. For these reasons, Petitioner cannot state a Fifth Amendment due process claim.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss the Fifth Amendment due process claim is GRANTED.

Respondent did not move for dismissal on Petitioner's claims of an Eighth Amendment violation. This asserted ground for habeas relief remain pending.

By September 21, 2023, Respondent must answer the remaining pending claims. *See* Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts; *id.* Rule 1(a) (making these Rules applicable to habeas corpus petitions other than those brought under Section 2254). The Court will then decide whether to conduct an evidentiary hearing. *See id.* Rule 8.

**SO ORDERED** at Hartford, Connecticut this 22nd day of August, 2023.

                                             */s/ Sarala V. Nagala*
                                             SARALA V. NAGALA
                                             UNITED STATES DISTRICT JUDGE